UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SCOTT BREHMER,

          Plaintiff,

    v.                                      Case No. 13-C-0888

MICHAEL DITTMAN, et al.,

          Defendants.

## DECISION AND ORDER

Plaintiff Scott Brehmer brought this pro se case pursuant to 42 U.S.C. § 1983, claiming that the conditions of his confinement while incarcerated at Redgranite Correctional Institution (Redgranite) violated his constitutional rights. The case is before the Court on several motions, including Defendants' motion for summary judgment and Plaintiff's motions for continuance of the summary judgment motion, for leave to file an amended complaint, for an extension of the discovery deadline, and to strike Defendants' response to one of his motions. For the reasons that follow, Defendants' motion for summary judgment will be granted and Plaintiff's motions will be denied.

## I. BACKGROUND

Plaintiff alleges that his cell was cold between December 9, 2011, and January 23, 2012, and he was not provided adequate clothing for the temperature in his cell. He further alleges that the defendants—Warden Michael Dittman, Captain Brian Gustke, Sergeant Ralph Wilson, and Correctional Officer Karen Schmidt—were deliberately indifferent to the cold temperatures and

inadequate clothing. Plaintiff originally named six individuals in his complaint, but the Court dismissed two of the named defendants at screening. (ECF No. 9.)

Plaintiff was confined in the segregation unit of Redgranite. (Def. Prop. Facts. ¶ 1, ECF No. 28.) The temperature in the Redgranite segregation unit is set at 71° F. (*Id.* at ¶ 21.) This temperature is maintained by a "constant volume heating system," which "means that heated air is constantly blowing into the cells." (*Id.* at ¶ 14.) The heating system works in two stages. First, the air pulled in from the outside is heated to 65° F in the "air handler heating coil." (*Id.* at ¶ 15.) Once at 65° F, the air passes through a second heating coil (the "reheat coil") before it is sent to the cells on the segregation unit. (*Id.*) Unlike the air handler heating coil which is always heating the air, the reheat coil is only activated if the temperature in the area needs to be raised. (*Id.*) A thermostat, called the "Duct Stat," determines whether the reheat coil needs to be activated. (*Id.* at ¶ 19.) The Duct Stat is located in the exhaust duct near the exhaust vent of the cell farthest down the range. (*Id.* at ¶ 19.) When the temperature reading by the Duct Stat falls below the set point, the reheat coil activates until the temperature rises above 71° F. (*Id.* at ¶ 20.) Thus, when the reheat coil is not active, the heating system blows 65° F into the segregation unit. (*Id.* at ¶ 15.) The air will never be colder than 65° F unless the air handler coil is malfunctioning. (*Id.* at ¶ 16.)

Plaintiff alleges that he complained about the temperature in his cell on multiple occasions during the winter of 2011–12. According to Plaintiff, he complained verbally or in writing to Warden Dittman, Captain Gustke, Sergeant Wilson, and Correctional Officer Schmidt on December 9, 12, 15, 27, and 28, as well as January 13 and 22. (Compl. 4, 6–7, 10–11, ECF No. 1.) He complained about not having "anything extra to help keep me warm" just one time on January 10. (*Id.* at 10.) He further alleges that Defendants ignored his complaints.

Alan Martin—the heating, ventilation, refrigeration, and air conditioning technician in charge of Redgranite's heating system (Def. Prop. Facts ¶¶ 22–23, ECF No. 28)—took temperature readings in the segregation unit on December 12, January 9, and January 25 in response to requests from Correctional Officer Schmidt and Warden Dittman. (*Id.* at ¶¶ 38–40, 69–74, 87–92.) When Martin receives a complaint about the temperature at Redgranite, he checks the temperature with "a hand held device called a Fluke Multimeter." (*Id.* at ¶ 28.) On December 12, Martin documented that the temperature in different areas of D-range, where Plaintiff was confined at the time, were between 70° F and 73° F. (*Id.* at ¶ 38.) On January 9, Martin found that the temperature in Plaintiff's cell (A-9) was 69.8° F. (*Id.* at ¶¶ 75–76.) The temperature was 70.7° F in cell A-10 on the same day. (*Id.* at ¶ 76.) On January 25, Martin measured the temperature in cell A-9 at 74° F. (*Id.* at ¶ 89.)

In addition to taking the temperature readings with the Fluke Multimeter, Martin also used the "building automation system (BAS) computer to create a history of the activation of the reheat coil in a specified location over a period of time as determined by the computer user." (*Id.* at ¶ 82.) This process is called "trending the coil." (*Id.*) The BAS computer can also be used to track the temperature readings from the Duct Stat, which is called "trending the temperature." (*Id.*) The result of trending the coil and trending the temperature is a line graph that displays the information of the specified time period. (*Id.*) Martin trended the coil and temperature for the A-range of the segregation unit on or around January 9. (*Id.* at ¶ 83.) "The trends showed normal temperatures within a degree or two of the 71° F set point and normal operation of the reheat coil." (*Id.*) Martin trended the coil again on January 25, 2012. (*Id.* at ¶ 91.) The results demonstrated that from

3

January 21 to January 23 the heating system was working properly. (*Id.* at ¶ 92.) It also indicated that the Duct Stat registered a temperature of 72.03° F on January 23 at 12:00am. (*Id.*)

Furthermore, Martin is not aware of any malfunctions or maintenance problems with the heating system in the segregation unit during the time period alleged in Plaintiff's complaint. (*Id.* at ¶ 25.) Nor is he aware of any problems with the air handler coil, the heating element used to bring outside air to 65° F, in particular. (*Id.* at ¶ 26.) Finally, although Martin does not regularly check the temperature with the Fluke Multimeter, he has done so approximately 25 times while working at Redgranite in response to complaints. (*Id.* at ¶¶ 29–30.) The coldest temperature he can ever recall was 68° F. (*Id.* at ¶ 30.) According to the affidavits of Correctional Officer Schmidt, Captain Gustke, and Sergeant Wilson, they did not personally observe cold temperatures in the segregation unit during the winter of 2011–12. (*Id.* at ¶¶ 54–56.)

While inmates are confined in the Redgranite segregation unit, the nursing staff conducts regular rounds that are documented "on a DOC-3388 form, Health & Psychological Rounds in Segregation/Security Log." (*Id.* at ¶ 96.) During the time period in which Plaintiff alleges that his cell was cold and he was suffering from physical ailments as a result, he was seen by nursing staff twelve times. (*Id.* at ¶ 97.) Plaintiff never made any complaints about physical problems related to the temperature in his cell to nursing staff. (*Id.*) Plaintiff was also seen by the prison physician on December 12 for a follow-up visit regarding abdominal pain. (*Id.* at ¶ 98.) He did not complain to the physician about any physical problems from cold temperatures. (*Id.* at ¶ 99.) Plaintiff did submit five Health Service Request forms and 13 Medication/Medical Supply Refill Requests between December 1, 2011, and January 31, 2012. (*Id.* at ¶ 102.) None of these requests mentioned physical problems related to cold conditions. (*Id.*)

## II.  LEGAL STANDARD

A motion for summary judgment should be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "Material" means that the factual dispute must be outcome-determinative under law.  *Contreras v. City of Chicago*, 119 F.3d 1286, 1291 (7th Cir. 1997).  A "genuine" issue must have specific and sufficient evidence that, were a jury to believe it, would support a verdict in the non-moving party's favor.  Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The moving party has the burden of showing there are no facts to support the non-moving party's claim.  *Celotex*, 477 U.S. at 322.  In determining whether to grant a motion for summary judgment, the court should consider the evidence presented in the light most favorable to the non-moving party.  *Anderson*, 477 U.S. at 255.  When the record, taken as a whole, could not lead a rational jury to find for the non-moving party, there is no genuine issue and therefore no reason to go to trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III.  ANALYSIS

### A.  Plaintiff's Motion for Continuance

Before addressing Defendants' motion for summary judgment, I will first consider Plaintiff's motion for a continuance under Rule 56(f)[1] filed on April 28, 2014.  Plaintiff apparently filed this

---

[1] The text of Federal Rule of Civil Procedure 56 changed as of December 1, 2010, however, the substance of the rule on which Plaintiff relies is essentially unchanged, now under Rule 56(d). The Court references Rule 56(d) from this point on.

motion instead of a response to Defendants' motion for summary judgment, which is otherwise

unopposed. Pursuant to Federal Rule of Civil Procedure 56(d),"[i]f a nonmovant shows by affidavit

or declaration that, for specified reasons, it cannot present facts essential to justify its opposition,

the court may" defer considering the motion, deny the motion, allow the nonmovant time to take

discovery, or "issue any other appropriate order." In his motion, Plaintiff requests that Defendants'

summary judgment motion be continued for 90 days to allow Plaintiff to conduct additional

discovery. (ECF No. 38.) Plaintiff failed to conduct any discovery before filing a motion to extend

discovery—along with interrogatories, requests for production, and requests for admission—two

days before the discovery deadline established by the scheduling order.

A Rule 56(d) motion "must (1) be presented in a timely manner; (2) show good cause for

the failure to discover the necessary facts sooner; (3) set forth a plausible basis for believing that

the necessary facts probably exist and can be learned in a reasonable time; and (4) establish that the

sought facts, if found, will 'influence the outcome of the pending motion for summary judgment.'"

*Adorno v. Crowley Towing And Transp. Co.*, 443 F.3d 122, 127 (1st Cir. 2006) (quoting *Resolution*

*Trust Corp. v. North Bridge Assocs., Inc.*, 22 F.3d 1198, 1203 (1st Cir. 1994)); *see also Kalis v.*

*Colgate–Palmolive Co.*, 231 F.3d 1049, 1058 n.5 (7th Cir. 2000). Although "[a] court may

disregard a failure to formally comply" with Rule 56(d), the opposing party's request for a

continuance must "clearly set[ ] out the justification for the continuance." *Pfeil v. Rogers*, 757 F.2d

850, 856 (7th Cir. 1985). "When a party fails to secure discoverable evidence due to his own lack

of diligence," the necessary justification is lacking, and "it is not an abuse of discretion for the trial

court to refuse to grant a continuance to obtain such information." *Id.* at 857; *see also Farmer v.*

*Brennan*, 81 F.3d 1444, 1449 (7th Cir. 1996) ("This Court has noted that the party seeking further

6

time to respond to a summary judgment motion must give an adequate explanation to the court of the reasons why the extension is necessary.").

Plaintiff's motion was timely as he filed it within 30 days of Defendants' motion for summary judgment, but he has not met the other requirements. First, although Plaintiff submitted a declaration in support of his motion, the declaration does not present good cause for his failure to discover the necessary facts sooner. Plaintiff's explanation is that he is employed full-time and is not experienced in the law. These are not sufficient reasons for his failure to conduct or even attempt to conduct any discovery in the months after the Court entered the scheduling order. He also failed to communicate with the Court until two days before the close of discovery. In short, Plaintiff failed to obtain any evidence or facts to oppose the motion for summary judgment because he was not diligent and neglected to conduct any discovery. Plaintiff's decision to wait on his discovery requests until the last minute is not sufficient reason to delay the consideration of Defendants' summary judgment motion. *See Pfeil*, 757 F.2d at 856.

Second, even if Plaintiff had demonstrated good cause, he has not set forth a plausible basis for believing that the necessary facts probably exist and can be learned in a reasonable time. At a minimum, Plaintiff's motion and declaration should have explained the basis for believing that his cell was unconstitutionally cold during the weeks alleged in the complaint. Plaintiff's declaration only references his inability to find six individuals who were held in segregation during the same time as Plaintiff. He does not explain what facts these individuals will provide that he is unable to provide himself.

Third, it is not clear how the testimony of these six other inmates would influence the outcome of this motion. As explained in more detail below, Defendants have presented evidence

that the Redgranite heating system was operating properly during the time period alleged in the complaint, that at no time was air colder than 65° F blown into the segregation unit, that the temperature in the segregation unit was maintained around 71° F throughout that time, that Defendants did not personally observe any excessively cold conditions, and that Defendants received and responded to Plaintiff's complaints about the temperature on multiple occasions.

Accordingly, because Plaintiff has not established good cause, set forth a plausible basis, or explained how the facts would influence the outcome of this motion, his motion will be denied.

**B. Defendants' Motion for Summary Judgment**

**1. Cold Cell and Inadequate Clothing**

Conditions of confinement that combine to deprive inmates of warmth may violate the Eighth Amendment. *Wilson v. Seiter*, 501 U.S. 294, 305 (1991). Under the Eighth Amendment, prisons must provide "reasonably adequate ventilation, sanitation, bedding, hygienic materials, and utilities." *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006) (internal quotation marks and citation omitted). Exposure to "extreme cold" alone may be sufficient to support an Eight Amendment conditions of confinement claim. *Dixon v. Godinez*, 114 F.3d 640, 642–43 (7th Cir. 1993). "[T]he minimal standards required by the Eighth Amendment include the right of a prisoner 'not to be confined in a cell at so low a temperature as to cause severe discomfort.'" *Id.* at 644. To succeed on an Eighth Amendment claim, the plaintiff must establish that "prison officials were deliberately indifferent to his needs." *Id.* at 644 (citing *Wilson*, 501 U.S. at 301–04).

Here, Plaintiff has not established that he was exposed to excessively cold cell temperatures. Contrary to his allegations of a freezing cold cell, the measured temperatures show the segregation

8

unit was a comfortable room temperature. Martin, the individual in charge of the Redgranite heating system, measured the temperature on December 12, January 9, and January 25. On December 12, Martin documented that the temperature in different areas of D-range, where Plaintiff was confined at the time, of the segregation unit were between 70° F and 73° F. (*Id.* at ¶ 38.) On January 9, the temperature in Plaintiff's cell (A-9) was 69.8° F. (*Id.* at ¶¶ 75–76.) The temperature was 70.7° F in cell A-10. (*Id.* at ¶ 76.) On January 25, Martin found the temperature in cell A-9 was 74° F. (*Id.* at ¶ 89.) The BAS computer also identified regular operation of the reheat coil from January 21–23, maintaining temperatures within a few degrees of the set point of 71° F. (*Id.* at ¶ 92.) It also indicated that the Duct Stat registered a temperature of 72.03° F on January 23 at 12:00am. (*Id.*) Moreover, none of the named defendants personally observed excessively or uncomfortably cold temperatures in the segregation unit during the winter of 2011–12. (*Id.* at ¶¶ 54–56.) Thus, the evidence demonstrates that the Redgranite heating system was operating properly and maintaining temperatures between 69° F and 74° F.

The established temperatures in the Redgranite segregation unit and Plaintiff's cells during the alleged time range do not invoke the kinds of circumstances at issue in other deprivation of warmth cases in this Circuit. *E.g.*, *Dixon*, 114 F.3d at 643 (temperatures in cell averaging 40 degrees Fahrenheit and regularly falling below freezing for four consecutive winters); *Murphy v. Walker*, 51 F.3d 714, 720–21 (7th Cir. 1995) (unheated cell and no blankets or clothing for a 1 and 1/2 weeks); *Del Raine v. Williford*, 32 F.3d 1024, 1036 (7th Cir. 1994) (prisoner housed in cell with broken windows in which temperature was near outdoor temperature including a period of two days where wind chills were from –40° F to –50° F); *Henderson v. DeRobertis*, 940 F.2d 1055, 1056–61 (7th Cir. 1991) (below freezing temperatures inside the cell and a malfunctioning heating system

over period of four days in which outside temperature fell to –22° F and a wind chill of –80° F). The facts here are more analogous to cases in which the temperatures were found to be more than acceptable under the Eighth Amendment. *Daniels v. Hickey*, No. 11 C 4151, 2012 WL 4759235, *8 (N.D. Ill. 2012) (70.1° F to 72.03° F); *Hagemann v. Schmitz*, No. 10-C-026, 2011 WL 38996, *3 (E.D. Wis. 2011) (69° F to 74° F); *Armstrong v. Brann*, No. 04-C-0884, 2006 WL 3422570, *5 (E.D. Wis. 2006) (65° F to 68° F). While Plaintiff may have preferred a different heating system or an increase in the 71° F set point in the Redgranite segregation unit, these changes are not mandated by the Eighth Amendment. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994) ("The Constitution 'does not mandate comfortable prisons.'") (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)).

Because Plaintiff's cell temperature claim and the related allegations about thermal underwear diverge so clearly from the above-described circumstances, summary judgment will be granted for Defendants and the claims dismissed. *See Dixon*, 114 F.3d 640 (emphasizing that bedding is relevant to question of whether inmate was adequately protected against cold). There is also no dispute that he never made any complaints to medical staff, despite regular visits from the nurses, about physical problems related to the cold temperatures. (Def. Prop. Facts ¶¶ 96–102, ECF No. 28.) Additionally, there is no dispute that Plaintiff had an extra blanket, even though the temperature was maintained at or near the set point at night. In sum, Plaintiff's cell was not unconstitutionally cold, and, even if the air blown into his cell was not as warm as he would prefer, he was provided adequate bedding and clothing to keep warm.

### 2. Deliberate Indifference

In addition to his inability to establish unconstitutional cell temperatures or deprivation of adequate clothing, Plaintiff cannot establish deliberate indifference by Warden Michael Dittman, Captain Brian Gustke, Sergeant Ralph Wilson, and Correctional Officer Karen Schmidt. "Deliberate indifference" means that the prison officials "each knew that [the prisoner] faced a substantial risk of serious harm, and yet disregarded that risk by failing to take reasonable measures to address it." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008). "Deliberate indifference" means something more than mere negligence, but something less than intentional conduct. *Del Raine*, 32 F.3d at 1031–32. If a prison official that does not know about the harm or cannot do anything about it, the official is not "deliberately indifferent" for failing to act. *Id.* at 1038.

As noted above, Plaintiff cannot show that there were problems with the heating system at Redgranite during the alleged time period. He has not established any injury or illness or even the complaint of an injury or illness to medical staff as a result of the alleged cold conditions. Plaintiff also cannot establish freezing temperatures in any cell in Redgranite's segregation unit. The evidence provided by Defendants demonstrates that the heating system was operating normally and the temperature was at or near 71° F. Nor can Plaintiff introduce any evidence contradicting the measured and recorded temperatures during the time he was housed there. It is also undisputed that Plaintiff was seen twelve times by the Redgranite nursing staff and at least once by the physician, but he never complained about the physical problems—headaches, difficulty sleeping, numbness, etc.—he alleges in the complaint. Moreover, although Plaintiff submitted five Health Service Request forms and 13 Medication/Medical Supply Refill Requests between December 1, 2011, and January 31, 2012, none mentioned problems from the cold conditions. In sum, he cannot establish

11

a substantial risk of harm which is predicate to a finding of deliberate indifference. *Dace v. Smith–Vasquez*, 658 F. Supp. 2d 865, 876 (S.D. Ill. 2009).

Moreover, Warden Dittman and Officer Schmidt responded to Plaintiff's inmate complaints and appeals. At the direction of the defendants, Martin measured the cell temperatures in the segregation unit three times: December 12, January 9, and January 25. The lowest recorded temperature was 69.8° F. Even though his temperature readings indicated that the heating system was functioning properly, Martin performed further computer tracking of the reheat coil and Duct Stat temperature during the months of December and January at the request of Warden Dittman. Martin's inquiries demonstrated that the heating system was operating properly and maintaining an adequate temperature throughout the alleged time period. Martin reported these findings to his superior, who forwarded them to Warden Dittman. By responding to Plaintiff's complaints Defendants showed the opposite of deliberate indifference; they showed that they took his complaints seriously, investigated, and took appropriate action. Because Plaintiff cannot establish deliberate indifference by Defendants, summary judgment will be granted his claims dismissed.

### 3. Qualified Immunity

Qualified immunity provides a separate and additional basis for granting summary judgment. Government officials performing discretionary functions are shielded from liability in their individual capacity insofar as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1992); *Hinnen v. Kelly*, 992 F.2d 140, 142 (7th Cir. 1993). Where immunity is raised at the summary judgment stage, district courts conduct a two-part analysis: (1) does the substantiated conduct set out a constitutional violation; and (2) were the constitutional standards clearly established at the

time in question. *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151 (2001); *see also Jones v. Wilhelm*, 425 F.3d 455, 460–61 (7th Cir. 2005).  Plaintiff must establish both prongs in order to defeat the defense of qualified immunity. *Jones*, 425 F.3d at 461.  For the reasons set forth above, Plaintiff has not established that Defendants violated his Eighth Amendment rights and therefore has not met the first prong of the *Saucier* analysis.

As for the second prong, Plaintiff cannot sustain a claim that Defendants' conduct was made in violation of clearly established law.  In determining whether the rights alleged to have been violated were "clearly established," the constitutional right must be identified in a particularized sense with respect to the circumstances of the alleged violation. *Warlick v. Cross*, 969 F.2d 303, 309 (7th Cir. 1992).  The contours of the right must be sufficiently clear that a reasonable official would understand that what the official was doing violated that right. *Anderson*, 483 U.S. at 640; *Jones*, 425 F.3d at 461.  Officials are entitled to immunity unless their conduct has been authoritatively determined to be unconstitutional. *Rakovich*, 850 F.2d at 1210.  In this case, Plaintiff has not and cannot present authority suggesting that a wintertime cell temperature in the high 60s to low 70s or a failure to provide thermal underwear in such temperatures deprives an inmate of constitutionally adequate warmth in order to defeat qualified immunity.

## C.  Plaintiff's Remaining Motions

Finally, Plaintiff has also filed a variety of motions—most of which were never fully briefed—requesting an extension of the discovery deadline, Defendants' response to Plaintiff's motion be struck, and leave to amend his complaint.  All of Plaintiff's motions lack merit and will be denied.

13

First, Plaintiff's request to extend the discovery deadline will be denied for the same reasons that his motion under Rule 56(d) is denied. Plaintiff had months to conduct discovery, but he failed to serve any discovery requests or otherwise communicate with Defendants during that time. While the Court can appreciate that Plaintiff's work schedule may have made pursuing this action more difficult, he has not provided sufficient cause to delay this case that so obviously lacks merits for the reasons indicated above. His lack of diligence is no reason to delay this case.

Second, Plaintiff's motion to strike Defendants' response is frivolous. Plaintiff argues that Defendants' violated Civil Local Rule 7(d) because they failed to file a supporting memorandum of law with their response to his motion. But Defendants' response is the memorandum of law required by the rule. Defendants' response was also timely, as it was filed just four days after Plaintiff's motion. Plaintiff also argues that the Court should strike Defendants' response because it misleadingly indicates that Plaintiff's motion for an extension was not filed before the March 5 deadline for discovery. However, Plaintiff's disagreement with the the merits of Defendants' timeliness argument is not a reason to strike the entire response. *See Custom Vehicles, Inc. v. Forest River, Inc.*, 464 F.3d 725 (7th Cir. 2006) (Easterbrook, J., in chambers); *see also* Preferred Procedures and General Information for Litigants appearing before Judge William C. Griesbach (May 2010), http://www.wied.uscourts.gov/index.php?option=com_content&task=view&id=39 ("Objections to another party's submission should normally be raised in the objecting party's merits brief, rather than in a separate motion to strike."). Accordingly, Plaintiff's motion to strike will be denied.

Third, Plaintiff filed a motion to amend his complaint on March 3, 2014. Plaintiff's motion sought to add "Maintenance Worker Mr. Martin and Department of Corrections Officer Radtke"

14

as defendants who "share joint culpability in the violation of [Plaintiff's] rights as set forth in his complaint, with all other named Defendants in this lawsuit." (Pl. Mot. for Leave to File Am. Compl. 2–3, ECF No. 16.) Plaintiff indicates that he "overlooked" these two individuals as possible defendants in his original complaint. (*Id.* at 1.) Defendants opposed the motion, arguing that Plaintiff had not demonstrated good cause, had failed to conduct any discovery to date, and filed his motion to amend just days before discovery was set to close. (Def. Resp. 1–3, ECF No. 23.) While the Court was awaiting Plaintiff's reply brief related to this motion, Defendants filed their motion for summary judgment. Despite having several weeks of extra time, Plaintiff has never filed a reply brief addressing Defendants' arguments against his motion.

"The court should freely give leave [to amend a complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2). However, "[d]istrict courts have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile." *Hukic v. Aurora Loan Servs.*, 588 F .3d 420, 432 (7th Cir. 2009) (citing *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008)). Moreover, when a party seeks to amend the pleadings after the time for doing so has passed according to the court's scheduling order, a court is entitled to apply the heightened good-cause standard of Rule 16(b)(4). *Alioto v. Town of Lisbon*, 651 F.3d 715, 719 (7th Cir. 2011). "[A]mong the aims of Rule 16 are to prevent parties from delaying or procrastinating and to keep the case 'moving toward trial.'" *Id.* at 720.

In this case, the Court denied Plaintiff's first motion to amend on January 24, 2014, which similarly sought to add Mr. Martin and Officer Radtke as defendants, because it failed to comply with Civil Local Rule 15(a) (E.D. Wis.). (ECF No. 15.) Despite the fact that he sought minimal

additions to his complaint, Plaintiff waited until March 3, 2014, just two days before the close of discovery as established by the scheduling order.

Under the circumstances of this case, Plaintiff has not provided good cause for amending the scheduling order. Plaintiff's late filing of his second motion to amend also constitutes undue delay and would prejudice the defendants. At a minimum, allowing Plaintiff's amended complaint at this point would require that the new defendants be served, file responsive pleadings, reopen discovery, and further delay a decision on Defendants' timely dispositive motion. In short, granting Plaintiff's motion would reward him for delaying his motion for weeks after the Court denied his first motion seeking to add Mr. Martin and Officer Radtke as defendants.

Additionally, because the proposed amended complaint contains no new factual allegations, it is clear that Plaintiff was aware of the alleged acts of Mr. Martin and Officer Radtke from the outset of this litigation. Plaintiff's mistake in "overlooking" Mr. Martin and Officer Radtke is not sufficient justification to delay this case several more months. The amended complaint also fails to allege a plausible claim of deliberate indifference against the new defendants. Plaintiff alleges that Plaintiff and Martin engaged in a brief conversation on January 9, 2012, while Martin was conducting a temperature reading. (Prop. Am. Compl. ¶¶ 42–45, ECF No. 16-1.) Nothing in that alleged conversation suggests that Martin was deliberately indifferent. To the contrary, the only reasonable inference from the conversation is that Martin was responding to a work order related to Plaintiff's complaint about the temperature, not being indifferent to it. Plaintiff's similarly brief exchange with Officer Radtke on January 10 also fails to state a valid claim. Thus, the amended complaint does not allege sufficient facts in any event and granting Plaintiff's motion would be an

16

exercise in futility.  Therefore, the Court concludes that an amendment would not serve the interests of justice at this stage in the proceedings and Plaintiff's motion will be denied.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (ECF No. [26]) is **GRANTED**.  Plaintiff's motions for a continuance (ECF No. [38]), for leave to file an amended complaint (ECF No. [16]), for an extension of the discovery deadline (ECF No. [17]), and to strike Defendants' response (ECF No. [40]) are **DENIED**.  The Clerk is directed to enter judgment dismissing the case forthwith.

Dated this   10th   day of July, 2014.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court